IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:23-CR-90-4 |
| | ) | |
| JOHN O'BRIEN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER REGARDING MR. O'BRIEN'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

Before the Court are three objections that Mr. O'Brien raised regarding findings in the Final Presentence Investigation Report (PSR). After careful review of the PSR (ECF 468), Mr. O'Brien's objections (ECF 479), and the government's response (ECF 480), the Court sustains his objection to the loss-amount calculation, but overrules his objections to the obstruction-of-justice enhancement and the sophisticated-means enhancement.

**I. Mr. O'Brien's objection to the loss-amount calculation.**

Mr. O'Brien objects to the PSR's total loss-amount calculation of $403,596.02. *See* ECF 468, ¶ 23. He does not contest responsibility for the $194,200[1] difference between John O'Brien Electric's initial bid and Keystone Tele-Data's ultimate charges, but only the $209,396.02 difference between Lewistown-MSF's payment to TopCoat and TopCoat's payment to Keystone. ECF 479, ¶ 5. Mr. O'Brien maintains that the latter amount is based on conduct underlying his acquitted conspiracy charge. *Id.* ¶ 5.

Under the Federal Sentencing Guidelines, "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of

[1] Although Mr. O'Brien objection states $194,500, he appears to be referring to the $194,200 amount from the PSR. ECF 479, ¶ 5; ECF 468, ¶ 23.

conviction." U.S.S.G. § 1B1.3(c). The commentary adds that, in cases where "certain conduct underlies both an acquitted charge and the instant offense of conviction . . . the court is in the best position to determine whether such overlapping conduct establishes, in whole or in part, the instant offense of conviction and therefore qualifies as relevant conduct." *Id.* § 1B1.3 cmt. n.10.

The question for the Court is whether the payment from Lewistown-MSF was conduct underlying the conspiracy charge, and, if so, whether it was also conduct underlying his convictions for wire fraud. *See United States v. Shafa*, 175 F.4th 1, 31 (1st Cir. 2026) (directions for the district court to clarify its ruling).

Resolving these questions is complicated by the apparent tension in the jury acquitting Mr. O'Brien of a conspiracy to commit fraud but convicting him of fraud. Because U.S.S.G. § 1B1.3(c) has only been in effect for fewer than two years, there is minimal case law to assist in this situation. Other courts have addressed cases in which a defendant was convicted of conspiracy but acquitted of some related charges, *see United States v. Scott*, 779 F. Supp. 3d 937, 941–43 (N.D. Ohio 2025), but differentiating the conduct for fraud when the defendant was acquitted of the conspiracy to commit fraud is more complicated.

However, as the Court addressed in its order denying Mr. O'Brien's Rule 29 and Rule 33 motions, the seemingly inconsistent verdict can be plausibly viewed as a result of the jury finding a lack of sufficient evidence of an unlawful conspiracy matching the specific description from the Superseding Indictment,[2] but finding proof beyond a reasonable doubt of a scheme to defraud. ECF 429, at 2 n.2. The Court accordingly interprets the verdict as finding Mr. O'Brien responsible for Keystone's fraudulent bidding practices, but insufficient evidence that he was a member of the

[2] The alleged conspiracy, as explained to the jury, was that the defendants "would submit and cause to be submitted fraudulent invoices to PHN and Lewistown-MSF, seeking payment for services purportedly performed by TopCoat, though TopCoat had done no work." ECF 367-1.

larger conspiracy to submit fraudulent invoices to PHN and Lewistown-MSF. As such, the Court deems him responsible for only $194,200 as to the loss amount.

Therefore, Mr. O'Brien's objection to the loss amount is sustained, and the appropriate enhancement is ten points instead of twelve. U.S.S.G. § 2B1.1(b)(1)(F).

## II. Mr. O'Brien's objection to the obstruction-of-justice enhancement.

The PSR found that Mr. O'Brien qualified for a two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1. ECF 468, ¶ 34. Specifically, the PSR determined that the jury rejected his trial testimony as false beyond a reasonable doubt. *Id.* Mr. O'Brien concedes that his testimony was material, but he argues that he did not willfully intend to falsely testify, and that the enhancement impinges on his right to testify in his own defense. ECF 479, ¶¶ 1–4.

"[W]henever a defendant challenges the application of a § 3C1.1 enhancement based on perjured testimony, 'the trial court must make findings to support all the elements of a perjury violation in the specific case.'" *United States v. Raia*, 993 F.3d 185, 193 (3d Cir. 2021) (quoting *United States v. Dunnigan*, 507 U.S. 87, 97 (1993)). Accordingly, the Court must find, by a preponderance of the evidence, "that the defendant (1) gave false testimony (2) concerning a material matter (3) with the willful intent to provide false testimony." *United States v. Napolitan*, 762 F.3d 297, 313 n.8 (3d Cir. 2014).

During his testimony, Mr. O'Brien described the payments to Mark Marriott as loans intended to help Mr. Marriott purchase property before he sold his house. Trial Transcript of John O'Brien ("Tr.") at 69:2-71:21. Evidence presented at the trial showed that the alleged loans lined up with increases in Keystone's bids, Tr. 96:11–97:22, and Mr. O'Brien's financial difficulties at that time raise doubts that he would voluntarily loan money for someone else to purchase property. Tr. 85:17–87:8. The Court thus determines that, by a preponderance of the evidence, the alleged loans

were actually kickbacks to Mr. Marriott. Mr. O'Brien's testimony was therefore false and, by his own concession, material. *See* ECF 479, ¶ 4.

Mr. O'Brien, however, contests that the falsities in his testimony were made with willful intent. *Id.*

A careful review of Mr. O'Brien's testimony contradicts his claim. When explaining how he loaned money to Mr. Marriott, Mr. O'Brien never qualified his testimony by expressing difficulty remembering, or that he was confused by the questions. *See* Tr. 69:2–71:21, 85:17–87:8. Without any further elaboration on how he did not intend to provide false testimony with a long and detailed false story, the Court concludes that the falsities were intentional. The two-point enhancement based on this particular testimony is justified, and the Court overrules Mr. O'Brien's objection.[3]

**III. Mr. O'Brien's objection to the sophisticated-means enhancement.**

Lastly, Mr. O'Brien objects to the application of the sophisticated-means enhancement. *See* U.S.S.G. § 2B1.1(10)(C). The Sentencing Guidelines' commentary defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense" including "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." U.S.S.G. § 2B1.1 cmt. n.9(B).

The PSR determined that the use of Keystone, a company controlled by Mr. O'Brien but officially under Tyler Babcock's name, was a sophisticated means. ECF 468, ¶ 31. Mr. O'Brien maintains that Keystone does not qualify as a fictitious entity or corporate shell because it was a real company that performed actual work on the

[3] Mr. O'Brien's argument that that the enhancement infringes on his right to testify, ECF 479, ¶ 2, can be rejected upon the finding of perjury. *See Napolitan*, 762 F.3d at 312 ("The Supreme Court has explicitly rejected the argument that permitting a perjury enhancement under § 3C1.1 unconstitutionally infringes on a defendant's right to testify.") (citing *United States v. Dunnigan*, 507 U.S. 87, 96 (1993)).

Lewistown project, and it was not used to hide assets or transactions. ECF 479, ¶ 8. Further, Mr. O'Brien maintains that he placed the company in Tyler Babcock's name to avoid issues resulting from Mr. O'Brien owning a non-union entity, not for the purpose of committing fraud. *Id.* ¶ 7.

The Third Circuit considers "efforts to avoid detection" a relevant factor of sophisticated means. *United States v. Albelli*, No. 25-2517, 2026 WL 1747148, at *1 (3d Cir. June 17, 2026). In *Albelli*, the Third Circuit affirmed the district court's application of the enhancement where the defendant used different businesses to illicitly collect funds, and that "while these businesses and accounts were preexisting, the District Court did not clearly err in concluding that Albelli's efforts to evade detection—including the use of multiple participants, accounts, and fictitious entities in his scheme—outweighed this fact." *Id.* at *2.

Even if Keystone was created before the conception of the scheme, and Mr. O'Brien had legitimate reasons to place the company in Mr. Babcock's name, the evidence presented at trial showed, and the government persuasively argues, that Mr. O'Brien used a nominee entity to hide his role in the scheme. *See* ECF 468, ¶ 12; ECF 173, at 12 (using the lack of an "official relation" between Mr. O'Brien and Keystone to try to shield Mr. O'Brien from being liable for Keystone's actions). This was a decision made to avoid detection, and therefore, the use of a nominee entity, in this case, was a sophisticated means. The presentence report correctly applied the sophisticated-means enhancement, and Mr. O'Brien's objection is overruled.

DATED this 21st day of September, 2026.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge